674 A.2d 944

Michael STEWART

v.

STATE of Maryland.

No. 79, Sept. Term, 1995.

Court of Appeals of Maryland.

April 17, 1996.

Jennifer P. Lyman, Washington, DC, for petitioner.

Annabelle L. Lisic, Assistant Attorney General (J. Joseph Curran, Jr., Attorney General, on brief), Baltimore, for respondent.

Argued before MURPHY, C.J., and ELDRIDGE, RODOWSKY, CHASANOW, KARWACKI, BELL and RAKER, JJ.

CHASANOW, Judge.

■ We are called on in this case to decide whether a prior inconsistent statement by a recanting witness in a criminal case may be admitted as substantive evidence at trial even though the party calling the witness knows beforehand that the witness intends to disavow his or her prior statement. We hold that prior inconsistent statements are admissible as substantive evidence, provided they fall within the circumscribed limitations discussed in *Nance v. State*, 331 Md. 549, 629 A.2d 633 (1993), regardless of whether the party calling the witness knows ahead of time that the witness intends to repudiate the prior statements.

## I.

The petitioner, Michael Stewart, was convicted in the Circuit Court for Baltimore City by a jury of first degree murder and use of a handgun in the commission of a crime of violence in connection with the shooting death of James "Man" Brandon. Brandon was shot twice and killed on July 9, 1993 in front of a house on West Lanvale Street in Baltimore. A key

witness to the murder was George Booth, who was sitting on a railing in front of the house immediately before the shooting. Police interviewed Booth the day of the shooting. In his first statement to police, Booth stated that he did not see either the shooting or the person who murdered Brandon. In a second statement to police that same day, however, Booth acknowledged having seen a man running from the murder scene just after the shooting. He told police that prior to the killing he was sitting on a railing in front of a house near the crime scene. Just minutes before the shooting, Booth said a man wearing blue shorts and a sweat jacket had walked in front of the house and told Booth to leave the area. Booth told police he heard five shots as he walked away. He looked back and saw the man in the shorts and jacket running from the scene. Booth told police he did not know the man he saw. Both of Booth's statements of July 9, 1993 were reduced to writing by police and signed by him.

Approximately three and a half months after the shooting, Booth was presented with an array of photographs by Baltimore City Police Detective Corey Belt, who asked Booth to identify Brandon's killer. Booth selected Stewart's photograph from the array and signed his name on the photo array card above Stewart's photo. On the back of the card, Booth wrote "I'm positive that he was the one that shot Man" and signed his name to the statement. That same day, Booth also appeared before the grand jury and testified that Stewart, who Booth knew as "Mike" or "Honky Tonk," was the person who shot Brandon. Booth testified that he was sitting on the railing in front of a house on West Lanvale Street with an acquaintance. Minutes before Brandon was murdered, Stewart walked up to Booth, showed him a gun and told him to leave the area. Booth left the railing and walked down a nearby alley. He testified that he heard shots, looked back and saw Stewart "doing the shooting."

Stewart was indicted on November 23, 1993 and charged with Brandon's murder. Booth was expected to be an important witness for the State, but it soon became apparent that he was reluctant to testify. Several weeks before trial, Booth

notified prosecutors that he had no intention of appearing at Stewart's trial. Booth failed to appear on the initial trial date and a bench warrant was issued. Booth was eventually located and appeared in court on April 25, 1994. At a pre-trial motions hearing, Booth offered testimony that differed substantially from his testimony before the grand jury. At the hearing, Booth testified that he had not initially selected Stewart's photo as that of the shooter. Rather, Booth claimed to have selected the photograph of another person, and that police pressured him into picking Stewart's photo. After the hearing, the circuit court denied Stewart's motion to suppress Booth's out-of-court photographic identification.

At trial the next day the State called Booth as a witness. Contrary to his earlier testimony before the grand jury, Booth testified at trial that he did not know the person who shot Brandon. He testified that the killer was someone he had never seen before. Booth stated that he did not identify Stewart's photograph from the police photo array, but rather selected another photograph. He acknowledged signing his name above Stewart's photo and writing on the back of the photo array card that he was "positive that [Stewart] was the one that shot Man," but he asserted that the police "hounded" him into doing so. The photo array card containing Booth's statement identifying Stewart as the shooter was then admitted into evidence.

While still under direct examination, Booth acknowledged appearing before the grand jury and testifying that Stewart was the person who showed him the gun in front of the house minutes before the shooting, told him to leave the area, and shot Brandon. Booth testified that his statements before the grand jury were truthful. On cross examination, however, Booth recanted again and testified that Stewart was not the shooter. Booth's grand jury testimony was then admitted into evidence. Additionally, both of Booth's July 9 statements to police, neither of which directly implicated Stewart, were admitted into evidence without objection.

Stewart appealed his conviction to the Court of Special Appeals, arguing, among other things, that the admission of Booth's grand jury testimony and written out-of-court statement identifying Stewart as the shooter was improper because the State's only purpose in calling Booth as a witness was to have his previous out-of-court statements implicating Stewart in the shooting admitted into evidence. The intermediate appellate court rejected Stewart's argument, and affirmed his conviction. *Stewart v. State,* 104 Md.App. 273, 655 A.2d 1345 (1995). We granted certiorari to consider Stewart's contention that the Court of Special Appeals erred in concluding that the statements were admissible. We affirm the ruling of the intermediate appellate court.

## II.

As a general rule, prior statements by a witness that are inconsistent with the witness's in-court testimony are admissible to impeach the credibility of the witness. *See Ali v. State,* 314 Md. 295, 305, 550 A.2d 925, 930 (1988); *Sun Cab Company, Inc. v. Cusick,* 209 Md. 354, 361–62, 121 A.2d 188, 191 (1956); 6 LYNN McLAIN, MARYLAND EVIDENCE, § 607.1(b) at 38 (1987). When offered to prove the truth of the matter asserted in the statements, however, a witness's prior inconsistent statements are hearsay[1] and thus traditionally were held to be inadmissible as substantive evidence. *See Ali,* 314 Md. at 304–05, 550 A.2d at 929–30; 1 McCORMICK ON EVIDENCE § 34, at 113 (John W. Strong ed., 4th ed. 1992). *See also Sun Cab,* 209 Md. at 361–62, 121 A.2d at 191 ("It is an accepted rule that any statement made by a witness prior to the trial is

---

1. Hearsay is defined as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." *Ali v. State,* 314 Md. 295, 304, 550 A.2d 925, 929 (1988); Maryland Rule 5–801(c). Hence, when an out-of-court statement is offered for a purpose other than to prove the truth of the matter asserted, *i.e.* to impeach the witness by showing that the witness previously made statements inconsistent with his or her in-court testimony, the statement is not hearsay. *Ali,* 314 Md. at 304–05, 550 A.2d at 930.

admissible for the purpose of impeaching the witness, but not as substantive evidence.").

■ In *Nance, supra,* however, this Court carved out an important exception to the general rule against the admissibility of prior inconsistent statements as substantive evidence. In *Nance,* we held that the factual portion of a witness's out-of-court statement is admissible as substantive evidence when: (1) the out-of-court statement is inconsistent with the witness's in-court testimony; (2) the prior statement is based on the declarant's own knowledge; (3) the prior statement is reduced to writing and signed or otherwise adopted by the witness;[2] and (4) the witness is subject to cross-examination at the trial where the out-of-court statement is introduced. 331 Md. at 569, 629 A.2d at 643. We also held that a witness's prior inconsistent testimony before a grand jury is admissible at trial, as long as the witness is available at trial for cross-

---

**2.** In adopting Md. Rule 5–802.1, which was not in effect at the time of the trial in this case, this Court restricted the use of prior written statements by eliminating the language "or otherwise adopted" from subsection (a)(2) of the proposed rule. Hence, under Md. Rule 5–802.1(a)(2), a prior written statement is not admissible unless it is "*signed* by the declarant." (emphasis added).

The draft of the rule proposed to this Court by the Standing Committee on Rules of Practice and Procedure was based on a Hawaii rule cited in *Nance v. State,* 331 Md. 549, 568 n. 7, 629 A.2d 633, 642 n. 7 (1993). At our final hearing on the rule, this Court made several modifications to the proposal before adopting it. The adopted version of the rule, with the language we deleted from the draft in brackets and the language we added underlined, provides in part:

"The following statements previously made by a witness who testifies at the trial or hearing and who is subject to cross-examination concerning the statement are not excluded by the hearsay rule:

(a) A statement that is inconsistent with the declarant's testimony, if the statement was (1) given under oath subject to the penalty of perjury at a trial, hearing, or other proceeding[s,] or in a deposition; (2) reduced to writing and signed [or otherwise adopted or approved] by the declarant; or (3) recorded in substantially verbatim fashion by stenographic[, mechanical, electrical, or other] or electronic means contemporaneously with the making of the statement...."

*Compare* Md. Rule 5–802.1(a) *with Memorandum from Standing Committee on Rules of Practice and Procedure,* at 9 (October 29, 1993). The rule took effect July 1, 1994. Our holding in the instant case would be the same under Md. Rule 5–802.1.

examination. *Nance,* 331 Md. at 571, 629 A.2d at 644. These dictates have since been codified in the Maryland Rules of Evidence. Maryland Rule 5–802.1 provides in pertinent part:

"The following statements previously made by a witness who testifies at the trial or hearing and who is subject to cross-examination concerning the statement are not excluded by the hearsay rule:

(a) A statement that is inconsistent with the declarant's testimony, if the statement was (1) given under oath subject to the penalty of perjury at a trial, hearing, or other proceeding or in a deposition; (2) reduced to writing and signed by the declarant; or (3) recorded in substantially verbatim fashion by stenographic or electronic means contemporaneously with the making of the statement."

■ Applying these principles to Booth's out-of-court statements in the instant case, we find no error in the trial court's decision to admit them as substantive evidence of Stewart's guilt. Both Booth's signed written statement to police on the back of the photo array card identifying Stewart as the killer and his grand jury testimony met the requirements of admissibility set out in *Nance.*[3]

---

**3.** Since neither of Booth's July 9 statements to police directly implicated Stewart in the shooting, and Stewart did not object to their admission at trial, we need not decide whether they were admissible under *Nance, supra.* We note, however, that a witness's statement written down by a police officer is not *per se* admissible under *Nance* or Md. Rule 5–802.1(a) even if signed by the witness. In *Nance,* we made clear that the signed statements were obtained by police in a way that supported our conclusion that they were accurate:

"[The witnesses] all were interviewed about events they said they had observed first hand. They provided full, descriptive answers, rather than responses of 'Yes' or 'No,' to the questions asked. The questions were not unduly leading. Detectives committed their questions and the declarants' answers to paper as literally as possible; this technique gave little room for a subjective interpretation of what was said. The witnesses expressly acknowledged the contents of the written statements to be true and accurate, and then signed them." 331 Md. at 569, 629 A.2d at 643. Hence, a statement recorded by police, even when signed by the declarant, might not be admissible if the circumstances suggest that the declarant did not clearly intend to adopt it by signing.

■ With regard to Booth's written statement that "I'm positive that he was the one that shot Man," *Nance* was satisfied.[4] The statement was clearly inconsistent with Booth's trial testimony, in which Booth denied knowing the person who killed Brandon. The statement was based on Booth's own knowledge of the shooting, was written down by Booth himself and signed by him. In addition, Booth was available for cross-examination.

■ Similarly, Booth's grand jury testimony met the requirements of admissibility under *Nance*. The grand jury testimony was given under oath and was transcribed verbatim. Booth was also available at trial for cross-examination. In *Nance*, we explained:

"[A] statement given before a grand jury is made in an atmosphere of formality impressing upon the declarant the need for accuracy; and it will be memorialized in a manner that eliminates concerns about whether the statement was actually made. The declarant must also, of course, be present as a witness at trial to be tested by cross-examination in regard to the former grand jury appearance and its contents. When all of these conditions have been met ... [the grand jury testimony may be] considered by the jury as substantive evidence." (Citation omitted).

---

We also point out that prior inconsistent unsigned written statements are not admissible under Md. Rule 5–802.1(a)(3) as substantive evidence unless they are recorded substantially verbatim by a reliable stenographer or electronic means contemporaneously with the making of the statement. In other words, an unsigned statement taken down in a police officer's "shorthand" is not substantive evidence under Md. Rule 5–802.1(a)(3). *See* LYNN MCLAIN, MARYLAND RULES OF EVIDENCE § 2.802.1(4), at 227 (1994). Such a statement may, however, be admissible under Md. Rule 5–802.1(a)(2) if signed and clearly adopted by the witness.

4. Stewart apparently concedes that Booth's out-of-court photographic identification of Stewart as the killer, apart from the signed statement, was admissible. *See Nance,* 331 Md. at 560, 629 A.2d at 639 (extrajudicial identification by an eyewitness admissible as substantive evidence when "made under circumstances precluding the suspicion of unfairness or unreliability, where the out-of-court declarant is present at trial and subject to cross-examination").

331 Md. at 571, 629 A.2d at 644. Accordingly, Booth's grand jury testimony was admissible as substantive evidence of Stewart's guilt.

### III.

Even though *Nance* was satisfied, Stewart argues that Booth's out-of-court statements should have been excluded because the State's only reason for calling Booth as a witness was to introduce his prior statements. Stewart contends that in order to admit Booth's prior inconsistent statements as substantive evidence, the State was required to have some purpose for calling him other than getting the out-of-court statements into evidence. Stewart posits that because the State knew before trial that Booth intended to repudiate his prior statements, it should not have been allowed to call him as a witness for the exclusive purpose of introducing his prior statements pursuant to *Nance*.

Stewart relies on our opinion in *Spence v. State*, 321 Md. 526, 583 A.2d 715 (1991), for the proposition that the State is barred from calling a witness that it knows will "contribute nothing to its case" for the sole purpose of admitting prior inconsistent statements of that witness. 321 Md. at 530, 583 A.2d at 717. In *Spence*, decided two and a half years before *Nance*, we held that it was improper for the State to call a witness that it knew would give testimony exculpating the defendant, and then use the witness's prior inconsistent statements incriminating the defendant to "impeach" that witness. 321 Md. at 530–31, 583 A.2d at 717. The witness, Vincent Cole, had made statements implicating Spence in an armed robbery. At trial, Cole told the prosecutor and the judge that, contrary to his earlier statements to police, he intended to testify that Spence was not involved in the crime. Nonetheless, the State asked that Cole be called as a witness. As expected, Cole testified that Spence was not involved in the crime. The State then impeached Cole with his prior statements to police incriminating Spence.

We reversed Spence's conviction, explaining:

"It is obvious that the prosecutor's sole reason for prevailing on the court to call Cole as a court's witness was to get before the jury Cole's extrajudicial hearsay statement implicating Spence. The prosecutor knew that Cole's testimony would be exculpatory as to Spence. The inescapable conclusion is that the State, over objection, prevailed on the court to call a witness who would contribute nothing to the State's case, for the sole purpose of 'impeaching' the witness with otherwise inadmissible hearsay.

* * * * * *

This blatant attempt to circumvent the hearsay rule and parade inadmissible evidence before the jury is not permissible. The State cannot, over objection, have a witness called who it knows will contribute nothing to its case, as a subterfuge to admit, as impeaching evidence, otherwise inadmissible hearsay evidence."

*Spence*, 321 Md. at 530, 583 A.2d at 717.

Three years after deciding *Spence*, we expanded its application in *Bradley v. State*, 333 Md. 593, 636 A.2d 999 (1994). In *Bradley*, the State called a witness to establish facts relevant to its case, but then questioned the witness concerning an "independent area of inquiry" about which the witness had made prior statements implicating the defendant. 333 Md. at 601, 636 A.2d at 1003. Even though the State knew the witness would repudiate his prior statements, the State was allowed to impeach the witness with the prior out-of-court statements. In reversing Bradley's conviction, we explained:

"The State knew that [the witness] would deny that the defendant confessed to the crime, yet still questioned him concerning the alleged confession. Thus, we are led to the 'inescapable conclusion . . . that the State, over objection, [questioned a witness concerning an independent area of inquiry knowing it] would contribute nothing to the State's case, for the sole purpose of "impeaching" the witness with otherwise inadmissible hearsay.' *Spence*, 321 Md. at 530, 583 A.2d at 717. In accordance with the *Spence* rationale, we hold that it is impermissible for a party in a criminal

case, over objection, to venture into an independent area of inquiry solely for purposes of 'circumvent[ing] the hearsay rule and parad[ing] inadmissible evidence before the jury.' *Spence,* 321 Md. at 530, 583 A.2d at 717." (Footnote omitted).

*Bradley,* 333 Md. at 601–02, 636 A.2d at 1003.

■ Stewart argues this reasoning should have been applied at his trial to bar the admission of Booth's out-of-court statements to police and before the grand jury. We disagree. As the Court of Special Appeals correctly pointed out in its opinion, the *Spence* rationale applies when a witness's prior inconsistent statements are admitted only for purposes of *impeachment,* not as substantive evidence. *See Stewart,* 104 Md.App. at 283, 655 A.2d at 1350. This distinction is vital to the resolution of this case.

The purpose of impeachment evidence is not to establish guilt, but to attack the credibility of a witness who has offered detrimental testimony. 6 MARYLAND EVIDENCE, § 607.1(b), at 37. In other words, the best result the State can hope for when it tries to impeach a witness is to neutralize that witness's testimony in the mind of the factfinder. *See Bradley,* 333 Md. at 605, 636 A.2d at 1005. No matter how incriminating, evidence admitted exclusively for purposes of impeachment is not substantive evidence of guilt and will not support a conviction. Its only purpose is to negate prior testimony. Thus, if the State learns before trial that one of its witnesses has recanted and intends to offer testimony exculpating the defendant, the State should simply refrain from calling the witness. *See Bradley,* 333 Md. at 606, 636 A.2d at 1005. In so doing, the State avoids the need to neutralize the witness's testimony.

■ The evil that *Spence* and *Bradley* sought to guard against was the misuse of impeachment testimony. The admission of prior inconsistent statements for impeachment creates the danger that the jury will misuse the statements as substantive evidence, despite instructions to the contrary. This danger does not exist where, as here, the prior state-

ments are admitted as substantive evidence of guilt. Hence, there is no need to protect against a party calling a witness as a subterfuge for getting impeachment evidence before the jury. As Judge Moylan explained:

"[Before *Nance,*] prior inconsistent statements were never received for their substantive content. There always lurked in the evidentiary shadows, however, the fear that the impeaching words, though not ostensibly offered for their truth, might nonetheless work, consciously or subconsciously, some spill-over substantive impact on the ears of the jurors. Wily trial advocates leaped eagerly on every such opportunity. It was to forestall just such exploitation and abuse of the impeachment device that the limiting strictures of *Spence* were imposed.

> \* \* \* \* \* \*

All of this, however, is quite beside the point when, *a la Nance,* the prior statements are openly offered and received as flat-out substantive evidence of guilt. There is no danger that something offered for one purpose will be misused for another and ulterior purpose. By definition, there can be no indirection or subterfuge, for the worst that could happen to a defendant is already officially authorized."

*Stewart,* 104 Md.App. at 279, 283, 655 A.2d at 1348, 1350.

■ *Spence's* prerequisite that the State be surprised by a recanting witness's testimony before inconsistent out-of-court statements can be admitted to impeach the witness was designed to prevent the misuse of the impeachment evidence by the jury. It has no applicability where, as here, a witness's prior inconsistent statements are offered as *substantive evidence* pursuant to *Nance.* As we explained in *Bradley:*

"[O]ur holding does not affect *Nance*.... Had [the witness's] prior statement been reduced to writing and signed, thus making it admissible as substantive evidence rather than solely impeachment evidence, it would have been admissible. In the instant case, however, the prior statement by [the witness] was not reduced to a writing and signed or

adopted by him and, thus, it was not admissible as substantive evidence."

333 Md. at 607, 636 A.2d at 1006.

 In the instant case, Booth's prior written statement to police was reduced to writing by Booth and signed by him. He was available for cross-examination at trial. Similarly, Booth's grand jury testimony met the requirements set out in *Nance.* Both statements were admitted as substantive evidence. Hence, the State was not required to show that it was surprised by Booth's testimony, or that it had a purpose in calling Booth other than seeking to admit his prior inconsistent statements. We find no error in the admission of the statements.

*JUDGMENT OF THE COURT OF SPECIAL APPEALS AFFIRMED. COSTS IN THIS COURT AND IN THE COURT OF SPECIAL APPEALS TO BE PAID BY PETITIONER.*