686 A.2d 676

**Jason THOMAS**

v.

**STATE of Maryland.**

**No. 161, Sept. Term, 1996.**

Court of Special Appeals of Maryland.

Dec. 24, 1996.

Victoria S. Lansburgh, Asst. Public Defender (Stephen E. Harris, Public Defender, on the brief), Baltimore, for appellant.

Thomas K. Clancy, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen. and Patricia Jessamy, State's Atty., for Baltimore City), Baltimore, for appellee.

Submitted before MOYLAN and SONNER, JJ., and PAUL E. ALPERT, Judge (retired), Specially Assigned.

PAUL E. ALPERT, Judge, Specially Assigned.

There are three issues before the Court in this criminal appeal. They are:

1. Whether the trial court committed reversible error in admitting as an exception to the hearsay rule a third party's confirmation of the key witness's prior inconsistent statements.

2. Whether the trial judge should have declared a mistrial after the jury, over a period of several days, was unable to reach a unanimous verdict.

3. Whether there was sufficient evidence to sustain the charge of murder.

Of central importance to our decision is the trial court's allowance of the extra-judicial statement and identification of a single witness as probative evidence in the conviction of the defendant. It is the difficulties caused by the prosecution's key witness in recanting his prior statement and identification at trial which in essence led to all of the questions presented on this appeal.

### Facts and Proceedings

This case is an appeal from appellant Jason Thomas's conviction by a jury in the Circuit Court for Baltimore City for second degree murder. Appellant was sentenced on January 30, 1996, to a term of thirty years imprisonment, to run consecutively with a sentence already being served.

The crime was the apparent gang-related murder of Garland "Binky" Bryant. Bryant was shot three times and killed on January 20, 1995. The key witness to the murder was Darryly Taylor, who was a close friend of the victim and had

been in a car with him shortly before the shooting occurred. Police, responding to a call about the shooting, found Darryly close to the scene of the crime, but, at the time, he gave virtually no information other than the name of the victim. At trial, Darryly admitted to being on the scene at the time of the shooting but recanted his prior statements placing the defendant Thomas on the scene.

## Inconsistent Prior Statements of the Witness

Police interviewed Darryly on the night of the shooting and took Darryly's statement, which was reduced to writing and signed by Darryly on each page. Police developed a suspect list and twelve days later, on February 1, 1995, Darryly was shown a photographic array out of which he picked appellant's photograph. This he also signed.

At trial, Darryly recanted his earlier statement and identification, saying that he did not remember making the statement and stating that the signature on the photo was the "[signature] that they made me sign." He admitted, however, that it was his signature which appeared both on the statement and on the photo.

## Admissibility of Inconsistent Prior Statements: The Rule

■ Maryland Rule 5–802.1, entitled "Hearsay Exceptions—Prior Statements by Witnesses," sets forth the criterion for the admissibility of prior inconsistent statements of a witness. In pertinent part, the rule states:

The following statements previously made by a witness who testifies at the trial or hearing and who is subject to cross-examination concerning the statement are not excluded by the hearsay rule:

(a) A statement that is inconsistent with the declarant's testimony, if the statement was (1) given under oath subject to the penalty of perjury at a trial, hearing, or other proceeding or in a deposition; (2) reduced to writing and signed by the declarant; or (3) recorded in substantially verbatim fashion by stenographic or electronic means con-

temporaneously with the making of the statement; Maryland Rule 5–802.1(a).[ 1]

The rule took effect on July 1, 1994 and was therefore binding on the trial judge at the time this decision was made. It in essence codifies prior Maryland case law.[2] Applying Rule 5–802 to the facts of this case, it is clear, and appellant does not dispute, that Darryly's own prior statement was admissible because (1) it was reduced to writing and signed by the declarant Darryly, and (2) Darryly was present at the trial and subject to cross-examination.

### Admissibility of Harry Taylor's Statements As To Darryly Taylor's Out–of–Court Statements

Darryly Taylor's extra-judicial statement and identification were hearsay.[3] Under Rule 5–802.1, they were admissible at trial as substantive evidence of appellant's guilt so long as Darryly himself was "subject to cross-examination concerning the statement. . . ." Darryly was, indeed, subject to cross-examination at trial and, as expected, he recanted his earlier statements.[4] Also at trial, however, the prosecution, over the

---

1. This portion of the rule in essence codifies the holding of *Nance v. State*, 93 Md.App. 475, 613 A.2d 428 (1992), *aff'd*, 331 Md. 549, 569, 629 A.2d 633, 644 (1993), in which case a witness's signed extrajudicial statements and photographs were held to have been properly admitted despite the witness's inability to confirm them at trial. The most recent case decided under the rule of *Nance, Stewart v. State*, 342 Md. 230, 674 A.2d 944 (1996), states that, although Rule 5–802.1 was not in effect at the time that the trial judge made his decision in the case, the outcome would have been the same had the rule been in effect.

2. *See, supra,* note 1.

3. Maryland Rule 5–801(c) defines "hearsay" as
   a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted.

4. The availability of the witness for cross-examination gives the jury an additional means of making its determination as to credibility. As one authority notes:
   (2) With respect to affording the trier of fact the advantage of observing the demeanor of the witness while making the statement, Judge Learned Hand's classic statement puts it:

defense's objection, called Darryly's brother, Harry, as a witness. Harry stated that, prior to the trial, Darryly had told him that Jason Thomas had been present at the scene of the murder. His description of Darryly's alleged prior statement, however, brought before the trier of fact the inconsistent prior statement of his brother, Darryly, which was itself hearsay, and which, unless falling under the exceptions carved out by Rule 5–802.1, should have been barred. The State argues that the evidence was admissible under Rule 5–802.1(c) and under the holding of *Joiner v. State*, 82 Md.App. 282, 571 A.2d 844, *cert. denied*, 320 Md. 312, 577 A.2d 362 (1990), and *Bullock v. State*, 76 Md.App. 85, 543 A.2d 858 (1988). Both cases were decided prior to Maryland's adoption of Title 5 of the Maryland Rules and, therefore, it is our interpretation of Rule 5–802.1(c), which ultimately determines the correctness of the proposition for which appellee relies on *Joiner*, that "third parties can testify to the statements of identification made by a witness."

Maryland Rule 5–802.1(c) allows as a hearsay exception: "[a] statement that is one of identification of a person made after perceiving the person," so long as the declarant, in this case Darryly Taylor, fulfills the general requirements of the rule by testifying at the trial and being available for cross-examination. Darryly's alleged statement to his brother that appellant had been on the scene of the crime was a statement of identification made after perceiving someone. Thus, the plain language of subsection (c) allows Harry Taylor's statement about Darryly's prior identification of appellant as present at the scene of the murder.[5]

---

> If, from all that the jury see of the witness, they conclude that what he says now is not the truth, but what he said before, they are none the less deciding from what they see and hear of that person and in court. [*DiCarlo v. United States*, 6 F.2d 364 (2d Cir.1925).]
>
> (3) The principal reliance for achieving credibility is no doubt cross-examination, and this condition is thought to be satisfied. *McCormick On Evidence*, § 251 at 118 (4th ed.1990).

**5.** Professor McLain, one of the drafters of Title 5 of the Maryland Rules, states:

■  Appellant argues, relying on *Spence v. State,* 321 Md. 526, 583 A.2d 715 (1991), and *Bradley v. State,* 333 Md. 593, 636 A.2d 999 (1994), that Harry's testimony should have been barred because, under the rule of *Spence,* the State may not call a witness for the sole purpose of "impeaching" the witness with otherwise inadmissible hearsay when it knows the witness will contribute nothing to the State's case on the stand. Under Rule 5–802.1, as well as under the rule of *Nance v. State, supra,* note 2, however, Darryly's prior statements were admissible as substantive evidence, not merely as impeachment evidence. As has been shown, both Harry and Darryly's testimony were admissible under Rule 5–802.1. Thus, it is not necessary to inquire whether Darryly's prior inconsistent statement of identification or Harry's statement as to Darryly's prior statements were or would have been admissible for "impeachment" purposes.[6]

Appellant's reliance on *Spence* and *Bradley* is misplaced. Darryly's prior statements and Harry's testimony as to those prior statements were admissible as substantive evidence both under Rule 5–802.1 and under the holdings of the Court of

---

Section (c) of Rule 5–802.1 provides that out-of-court statements of identification of a person made after perceiving the person will not be excluded by the hearsay rule—if the two requirements described in subsection a of this section, supra, are met.
Lynn McLain, Maryland Rules of Evidence § 2.802.1(1)(d) at 221 (1994). The subsection (a) requirements to which she alludes are the general requirements in the Rule 5–802.1 situation that the identifying witness testify at the trial and be subject to cross-examination. *Id.* at 221.1

**6.** The rule allowing admissibility of certain kinds of inconsistent prior statements as substantive evidence leaves parties availing themselves of the rule in uncharted legal waters, however, because the requirement of Rule 5–802.1, that the declarant must be available for cross-examination, will, in essence, require their calling a witness who is at the worst hostile, and at best unable to recall or confirm his earlier statement. In the instant case, although the State was permitted by the rule to rely on Darryly's prior statements, the rule also required Darryly to be called as a witness whose recanting of his prior statements made him by definition a witness hostile to the State's case. Thus, the State, by its reliance on the 5–802.1 exception to the hearsay rule, was placed in a situation in which it was required to call a witness it knew to be hostile to its case and who it was in the State's interest to impeach.

Appeals in *Stewart* and *Nance*.[7]

## The Jury's Deliberation

█ Both appellant and appellee cite *Mayfield v. State*, 302 Md. 624, 490 A.2d 687 (1985), for the proposition that the standard for appellate review of a trial judge's decision to allow a jury to continue to deliberate is that of "abuse of discretion." *Id.* at 631–32, 490 A.2d 687. In *Mayfield*, the Court of Appeals refused to overturn a judge's decision to allow a jury to continue to deliberate when he gave an ABA approved "Allen Charge" to the jury and allowed the jury to continue to deliberate even after the jury had sent him a note stating that it could not arrive at a unanimous decision and listing the number of jury votes for and against on each count.

---

7. *Stewart v. State, supra,* n. 1, summarized the rationale of the *Spence* and *Bradley* precedents as follows:

The evil that *Spence* and *Bradley* sought to guard against was the misuse of impeachment testimony. The admission of prior inconsistent statements for impeachment creates the danger that the jury will misuse the statements as substantive evidence, despite instructions to the contrary. This danger does not exist where, as here, the prior statements are admitted as substantive evidence of guilt. Hence, there is no need to protect against a party calling a witness as a subterfuge for getting impeachment evidence before the jury.

*Id.* at 242–43, 674 A.2d 944. The Court of Appeals went on to distinguish the *Spence* and *Bradley* cases where evidence of prior statements had been introduced solely for the purpose of impeachment of a witness from situations in which, under the limitations established by the rule of *Nance*, the prior statement is admissible as substantive evidence. *Stewart, supra,* 342 Md. at 242–43, 674 A.2d 944. The Court quotes with approval the rationale of this Court, pointing out that, in the situation where prior statements are being admitted as substantive evidence, the danger alluded to in *Stewart* and *Bradley*, that impeachment evidence normally admissible only to neutralize a witness's testimony will be mistaken by the fact-finder for substantive evidence, is not present:

All this, however, is quite beside the point when, a la *Nance*, the prior statements are openly offered and received as flat-out substantive evidence of guilt. There is no danger that something being offered for one purpose will be misused for another and ulterior purpose. By definition, there can be no indirection or subterfuge, for the worst that could happen to a defendant is already officially authorized.

*Id.* at 243, 674 A.2d 944 (quoting *Stewart v. State*, 104 Md.App. 273, 283, 655 A.2d 1345), *cert. granted,* 339 Md. 739, 664 A.2d 935 (1995).

In upholding the trial judge's decision and, therefore, also the defendant's convictions, the Court explained:

> The only other alternative, and the one apparently advocated by the defendant Mayfield, is to hold that whenever the jury is deadlocked and the vote is voluntarily disclosed, the trial judge must, as a matter of law, declare a mistrial. In our view, this would be inconsistent with the settled principle that a trial judge's determination to have a jury continue deliberating or to declare a mistrial is a matter largely within his discretion. This particular discretion has been deemed "broad," and a "trial judge's decision [whether or not] to declare a mistrial when he considers the jury deadlocked is therefore accorded great deference by a reviewing court."

*Mayfield,* 302 Md. at 631, 490 A.2d 687 (citing *In re Mark R.,* 294 Md. 244, 449 A.2d 393 (1982), quoting from *Arizona v. Washington,* 434 U.S. 497, 509–510, 98 S.Ct. 824, 832, 54 L.Ed.2d 717 (1978)). Thus, the Court in *Mayfield* reaffirmed the Maryland Court of Appeals' commitment not to draw hard and fast rules limiting trial judges' discretion in allowing juries to deliberate and also affirmed the proposition that "great deference" should be accorded to the trial judge's determination. The *Mayfield* Court further states that a judge's determination will be reversed "only when the appellant demonstrates an abuse of discretion because of circumstances in a particular case." *Id.* at 632, 490 A.2d 687. The issue in this appeal, then, is whether the trial judge abused his discretion in not declaring a mistrial after the jury, over a period of several days, was unable to reach a unanimous verdict.

Maryland's refusal to adopt strict rules limiting a trial judge's discretion in permitting juries to deliberate puts it in line with the majority of jurisdictions. Although a few states have placed statutory limits on the number of times a judge may order a jury to renew deliberations, the majority of jurisdictions adhere to the rule that the jury may be sent back

for further deliberations once, twice, or several times.[8]

In the case at bar, the jury reported three times over a period of two days that it was deadlocked. The deliberations started at 2:32 p.m. on a Friday, and at 4:38 p.m. the jury informed the court that it was hung on the second-degree murder count, for which appellant Thomas was eventually convicted. Defense counsel did not object to the trial judge's sending the jury home and having them return on Monday, noting that the case was a murder case and the jury had only been deliberating for two hours. The jury resumed deliberations on Monday and at 2:15 p.m. sent a note indicating that it remained deadlocked. The judge, however, instructed the jury to keep deliberating, and the carrying over of deliberations into Tuesday was granted at the jury's request, after it had informed the trial judge that it had made some progress and wanted some time to sleep on its deliberations at that stage. On Tuesday, the jury continued its inability to reach a decision until 11:24 a.m., at which point the jury, over the defense's objection to the court's denial of its motion for a mistrial, gave the ABA-approved Allen charge. At 2:52 p.m., the jury informed the court that it had reached a verdict.

The cases cited by appellant, arguing the trial judge abused his discretion in not granting a mistrial, are of no avail to appellant. The "manifest necessity" standard, which was established by Justice Story in 1824, is still the law today:

> [T]he law has invested Courts of justice with the authority to discharge a jury from giving a verdict, whenever, in their opinion, taking all the circumstances into consideration, there is manifest necessity for the act, or the ends of public justice would be otherwise defeated.

*United States v. Perez*, 22 U.S. (9 Wheat.) 579, 580, 6 L.Ed. 165 (1824) (cited by *United States v. Goldstein*, 479 F.2d 1061, 1068 (2d Cir.), *cert. denied*, 414 U.S. 873, 94 S.Ct. 151, 38

---

**8.** WAYNE R. LAFAVE, CRIMINAL PROCEDURE § 24.6 at 1044 (2d ed.1992).

L.Ed.2d 113 (1973)).[9] Nothing in the record indicates that the trial judge failed to acknowledge any circumstance or circumstances which gave rise to a "manifest necessity" for him to declare a mistrial. The jury in the case was called to make a difficult determination in regard to the credibility of a witness's extra-judicial statement and identifications, balanced against the witness's own recanting statements at trial.

Both the extra-judicial identification and the testimony recanting it were admissible as substantive evidence of the defendant's guilt, and, while the witness's conflicting testimony may have complicated the case, a case's complexity, as well as the nature of the evidence, may be reasons for allowing a jury extra time to deliberate. Professor Lafave suggests:

> The reasonableness of the deliberation period depends on such factors as the length of the trial, the nature or complexity of the case, the volume and nature of the evidence, the presence of multiple counts or multiple defendants, and the jurors' statements to the court concerning the probability of agreement.

WAYNE R. LAFAVE, § 24.6(d) at 1044, n. 13.

The complexity of the case and the nature of the evidence, as well as the jurors' statement concerning the likelihood of their reaching a verdict, are factors to be considered in determining whether the trial judge properly determined there to have been no "manifest necessity" for declaring a

---

**9.** Appellant relies on dictum in *United States v. Larry*, 536 F.2d 1149 (6th Cir.), *cert. denied*, 429 U.S. 984, 97 S.Ct. 502, 50 L.Ed.2d 595 (1976), to argue that over-lengthy jury deliberations tend to coerce verdicts:

> a deadlocked jury being compelled to continue deliberations ... more often than not defeats the ends of justice; not only will such compulsion needlessly waste valuable judicial resources, it may coerce erroneous verdicts.

*Id.* at 1153–54. The same case, however, warns against allowing such language to crystalize into rules in these cases:

> The Supreme Court has stated that the determination as to whether a mistrial is to be declared hinges upon the taking into account of all the circumstances, which "forbids the mechanical application of an abstract formula."

*Id.* at 1152.

mistrial. And the presence of these factors in the case at bar renders a court of appellate review's second-guessing a trial judge's determination in this situation all the more intrusive and unwarranted. The trial judge in this case clearly did not abuse his discretion in determining to allow the jury to deliberate.

### Sufficiency of the Evidence

■ Appellant argues that, even if the disputed evidence in the case was properly admitted, that evidence was nonetheless insufficient to sustain his conviction. The sole case on which appellant relies for this proposition is *Gibbs v. State,* 7 Md. App. 35, 253 A.2d 446 (1969). In *Gibbs,* the defendant was found guilty of attempted armed robbery based on his victim's extra-judicial identification. The jury convicted, despite the fact that the victim, Reilly, recanted at trial his earlier identifications. In overturning the jury verdict, the Court stated:

> The prosecuting witness' testimony was not at all contradictory; he simply stated that he had made a mistake in identifying appellant at the extrajudicial confrontations and that he was not the robber.

*Id.* at 39, 253 A.2d 446.

The Court in *Nance v. State, supra,* 331 Md. at 561–62, 629 A.2d 633, described the exception carved out by *Gibbs* in regard to the sufficiency of inconsistent prior statements to sustain a conviction as being appropriate in situations where the witness "positively exculpates" the defendant. The victim of the attempted robbery in *Gibbs* stated at trial that, not only had his prior statements been incorrect, but that he was certain that the defendant was not the man who had robbed him. *Gibbs, supra,* 7 Md.App. at 39, 253 A.2d 446. That case is distinguishable from the instant case, where the witness, Darryly Taylor, although in a position to place the defendant on the scene of the crime at the time of the murder, was in no position to "positively exculpate" the alleged murderer. Unlike the victim/witness in *Gibbs,* Darryly did not actually see the murder take place and, therefore, was in no position to "positively exculpate" the defendant. The only people under a

*Gibbs*-type rationale who could have "positively exculpated" the appellant were the victim of the crime, *i.e.*, the murdered man himself, or another eye-witness to the murder. Obviously, the former could not testify, and, there being a lack of the latter, the rule of *Gibbs* does not apply.

There is a further difficulty raised by appellant's reliance on *Gibbs*. In *Gibbs*, the Court of Special Appeals made a determination based on the record that the witness's statements at trial were more credible than his extra-judicial identification. Of course, Rule 5–802.1, in allowing inconsistent extra-judicial statements into court so long as the witness is available for cross-examination, necessarily requires that a trier of fact make a determination as to whether the in-trial statement or the extra-judicial statement of a given witness is more credible. This consideration leads us to the policy rationale for requiring that a witness who has made inconsistent extra-judicial statements be available for cross-examination:

(2) With respect to affording the trier of fact the advantage of observing the demeanor of the witness while making the statement, Judge Learned Hand's classic statement puts it:

If, from all that the jury see of the witness, they conclude that what he says now is not the truth, but what he said before, they are none the less deciding from what they see and hear of that person and in court.

2 MCCORMICK ON EVIDENCE 4, § 251 at 118 (4th ed.1992). Thus, in the case of inconsistent extra-judicial statements, the trier of fact must make a determination based on the witness demeanor and other circumstances as to whether the inconsistent extra-judicial statements or the witness's statements at trial are more credible. As appellee noted, appellant, in relying on *Gibbs, supra*, is asking this Court to overturn a jury's determination as to the credibility of witnesses, although the situation is unusual in that the determination actually being made is as to whether the witness's statements at trial or his prior inconsistent statements are to be believed.

The standard for appellate review of a jury's determination of fact is a high standard. In such a case,

> the relevant question is whether, after viewing all the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.

*Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979)(emphasis in original).

In the case at bar, the extra-judicial identification and statements made by the witness, Darryly Taylor, as well as the statements made by Harry Taylor, were properly admitted as substantive evidence of the appellant's guilt. The jury returned a verdict of guilty and, on the basis of the record, it cannot be said that no rational trier of fact could have reached such a verdict. Accordingly, appellant's argument that the judgment should be overturned on the basis of insufficient evidence must fail.

JUDGMENT AFFIRMED; APPELLANT TO PAY THE COSTS.